**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CRISTIAN GERARDO LOPEZ MONZON,** | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Case No. 6:26-cv-03790-MDH** |
| **JASON JOHNSON,** ***et al.*****,** | ) | |
| **Respondents.** | ) | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner has been detained by the Department of Homeland Security ("DHS") and parole has been terminated without prior written notice. Pending is his Verified Petition for Writ of Habeas Corpus in which he argues federal statutes and the Due Process Clause require that he be released or granted a hearing. The Court agrees with Petitioner's constitutional arguments, and on that basis, it concludes the Petition for Writ of Habeas Corpus should be **GRANTED**.

**BACKGROUND**

Cristian Gerardo Lopez Monzon, a citizen of Guatemala, entered the United States on or about March 11, 2017. He was paroled into the interior of the U.S. He built his home, family, and community here. He is a father to two U.S. citizen children. On or about November 6, 2026, Mr. Lopez Monzon was taken into immigration custody and transported to Greene County Jail in Springfield, Missouri, where he remains today.

He has now been detained for nearly two weeks. He has not been afforded the opportunity to appear before an Immigration Judge at an individualized bond hearing.

Mr. Lopez Monzon had lived openly and lawfully under long-standing protections. DHS had already exercised its discretion to defer his removal and authorized his presence in the United States. The safeguards he had relied on for almost a decade no longer applied, and the process that should have protected his basic liberties instead left him without a meaningful avenue to challenge his detention. Respondents do not contend that this status was revoked prior to his detention.

Now, he has filed this writ seeking release, or at a minimum, any process at all. The matter has been fully briefed by each party. Petitioner bases the writ on statutory and constitutional grounds under the Fifth Amendment.

While the statutory grounds upon which Petitioner relies has, for the past twenty-nine years and five presidential administrations, been interpreted to mean that he was entitled to a bond hearing during his removal proceedings, the new presidential administration has adopted a novel interpretation of that statutory scheme.

A divided panel of the Eighth Circuit recently agreed with this administration's interpretation. This Court is therefore bound by the panel's interpretation of the statutory scheme.[1] So, given this change in long standing statutory interpretation, this Court is left to analyze the writ on constitutional grounds.

While the above facts make it apparent to the Court that no process has been afforded to Petitioner and that he has been deprived of his rights under the Fifth Amendment, courts have typically relied on a more detailed and contextualized analysis, and the Court will do so below.

---

[1] The Court notes a circuit split over the interpretation of the mandatory detention provision at 8 U.S.C. § 1225(b)(2)(A). In the Fifth and Eighth Circuits, habeas petitioners challenging detention under § 1225(b)(2)(A) face a statutory bar to bond hearings. In the First, Second, Third, Fourth, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits, petitioners can still seek bond hearings under § 1226(a), and habeas claims may succeed if detention is shown to be without a bond hearing. The Supreme Court of the United States recently granted certiorari on this issue in *Rhoney v. Barbosa da Cunha*, Case No. 26-104, 2026 WL 2942994 (U.S. Oct. 1, 2026).

## DISCUSSION

"No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. First, Cristian Gerardo Lopez Monzon is a person. He is a person who was exercising the civil liberties awarded to him nearly ten years ago. Those liberties were stripped by government action. What is left for this Court to decide is whether he received due process of law in those actions. Respondents claim the process they have already given Petitioner—none—satisfies his due process rights.

Respondents claim Petitioner is treated as an "applicant for admission" under 8 U.S.C. section 1225(b)(2)(A), and therefore he is entitled to no process beyond the issuance of a Notice to Appear. They contend they can detain him for an indefinite period of time without any opportunity for a hearing. Respondents rely heavily on *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) and *Demore v. Kim*, 538 U.S. 510 (2003). However, these cases recognize limited procedural rights in the *admission* context, not the detention context, and are factually distinct from the case at hand.

The petitioner in *Thuraissigiam* did not seek release from custody; he sought additional review of his asylum claim. The Court expressly noted that "the legality of his detention is not in question." *Id.* at 122. Petitioner here does not ask this Court to admit him or to alter his immigration status, so the only holding in *Thuraissigiam* is inapposite. Here, Petitioner seeks only what due process requires: an opportunity to have his custody reviewed.

The facts in *Thuraissigiam* are distinct from the facts of the present case. The petitioner there was apprehended "25 yards" inside the United States, effectively at the border. *Id.* at 139. By contrast, Mr. Lopez Monzon has lived in the United States for almost a decade pursuant to an active grant of deferred action by DHS.

These distinctions are dispositive and *Thuraissigiam* is inapposite. A lengthy discussion of the plenary power to control which individuals outside the United States may be permitted to enter is not the relevant question here. The issue here is whether the United States can suddenly and indefinitely detain a nine-year parolee without prior notice and with zero review or oversight.

The Court in *Demore* did not discuss detention of all noncitizens. Instead, it explicitly discussed "detention during removal proceedings for a limited class of deportable aliens" who had committed serious crimes. *Id.* at 518. It found that mandatory detention under section 1226(c) was constitutionally permissible for the specific subset of people Congress listed including aggravated felons who had already had their due process rights during their criminal proceedings. *Id.* at 510. The *Demore* Court did not rule out constitutional challenges for people like Petitioner who have no criminal convictions or other factors which mandate classification under section 1226(c). *Demore* does not preclude Petitioner's due process claim.

**Due Process Analysis**

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 679 (2001). Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

The Court disagrees with Respondents' argument that Petitioner's due process rights are limited solely to what he has already received: no process at all. Under *Mathews*, Due Process is "flexible" and:

> identification of the specific dictates of due process generally requires consideration of three distinct factors: *First*, the private interest that will be affected by the official action; *second*, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and *finally*, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335 (emphasis added).

Private Interest

Undoubtedly, the private interest at stake here "is the most elemental of liberty interests—the interest in being free from physical detention[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Petitioner has been held in a county jail—in conditions indistinguishable from criminal incarceration—since November 6, 2026. He is unable to return to his family and the life he has created over the last nine years. Every day that passes under this unlawful detention is a day that cannot be recovered. *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (first *Mathews* factor strongly satisfied where petitioner was "locked up in jail" and "could not maintain employment or see his family or friends or others outside normal visiting hours").

Risk of Erroneous Deprivation

After the Fifth Circuit's ruling on interpretation of the statutory arguments in this case, the court in *Alfonzo-Mujiuca v. Thompson*, Case No. SA-26-CA-00457-XR, 2026 WL 752625 (W.D. Tx. Mar. 13, 2026), found that the risk of erroneous deprivation of petitioners' rights in these cases is high. The court found:

> Our immigration law has long recognized that noncitizens have an interest in an individualized hearing prior to detention in connection with immigration proceedings. *See Yamataya,* 189 U.S. at 101. And the Supreme Court has required individualized hearings for deprivations of interests less fundamental than Petitioner's interest in freedom from detention. *See Goldberg v. Kelly,* 397 U.S. 254, 268 (1970) (requiring an individualized hearing prior to the termination of

> welfare benefits). Here, the risk of an erroneous deprivation of Petitioner's rights is high. Without an individualized hearing, there is substantial risk that noncitizens with a substantial presence in the United States who pose neither flight risk nor danger to the community will be detained. An individualized assessment before an immigration judge substantially reduces this risk. *Cf. Demore,* 538 U.S. at 531–32 (Kennedy, J., concurring) (reasoning that "due process requires individualized procedures to ensure there is at least some merit to the" charge and detention). An individualized analysis ensures the purpose of detention is not punitive.

*Alfonzo-Mujiuca* at 23.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews* at 333. Petitioner's continued detention without an opportunity to be heard is the type of erroneous deprivation *Mathews* intends to stop. The basis for his detention requires, and deserves, a hearing. Nothing in the record shows Petitioner poses a danger or flight risk. He has lived in the United States for almost ten years, and nothing suggests he has not complied with the terms of his parole. He has no criminal convictions.

<u>Balancing of Interests</u>

The final factor directs the Court to weigh the private interests at stake and the risk of erroneous deprivation of those interests against Respondents' interests in persisting with the regulation, including the fiscal and administrative burdens of an additional or substitute procedural requirement. *Mathews* at 335. The Government identifies no interest in detaining Petitioner based on danger, flight risk, or obstruction of removal. A bond hearing would not undermine immigration enforcement; it would ensure that detention is exercised lawfully and in accordance with the Constitution. Here, the Government's interest in detaining Petitioner without due process is minimal.

In sum, the *Mathews* factors weigh in favor of Petitioner, and the Court finds that his continued detention violates due process.

Immigration courts have concluded there is no jurisdiction to conduct a bond hearing. DHS provides no alternative mechanism for individualized custody review. Petitioner has no forum, administrative or judicial, through which he may seek release based on his circumstances. This is not minimal process. It is zero process. Respondents' position, that no such process is required, cannot be reconciled with the Fifth Amendment.

## CONCLUSION

The Court concludes Petitioner's right to procedural due process has been violated. Accordingly, the Petition for Writ of Habeas Corpus is **GRANTED** as follows.

1. Respondents are **ORDERED** to immediately release Petitioner from custody.
2. Respondents shall make accommodations available for Petitioner until such time as arrangements can be made for him to be returned to the location of arrest or other location agreed by the parties.
3. Petitioner shall promptly report to the Court any failure to comply with this Order by Respondent.
4. It is **FURTHER ORDERED** that Respondents are enjoined from relocating Petitioner outside the jurisdiction of this Court prior to compliance with this Order.

**IT IS SO ORDERED**.

DATED: November 19, 2026

*/s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**